IN THE UNITED STATES DISTRICT COURT

FOR THE DIST`RICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                 Plaintiff,<br><br>vs.<br><br>DAVID ALEXANDER MALYK,<br><br>                 Defendant. | Case No. 4:23-cr-00021-RRB<br><br>**ORDER DENYING<br>MOTION TO SUPPRESS**<br>**(Docket 29)** |

## I.  INTRODUCTION

Before the Court at Docket 29 is Defendant with a Motion to Suppress that is opposed by the Government at Docket 30.  An evidentiary hearing was held August 30, 2024, and a transcript was filed at Docket 59.  The Court has studied the 133-page transcript in detail.  The Government's final argument was filed at Docket 68 and Defendant's final argument was filed at Docket 69.  The Court has withdrawn the referral to the Magistrate Judge and resolves the matter below.

## II.  FACTS

The facts hereof are not in significant dispute, nor is there great dispute as to the relevant law.  Defendant was on probation for state DUI charges.[1]  After failing to report to his

---

[1] A judgment dated August 8, 2019, resulted from Defendant's plea of guilty to a felony, Driving Under the Influence, with two other prior qualifying convictions (Alaska Stat. § 28.35.020(n)), in the State of Alaska.  The judgment included probation with various conditions discussed herein.

probation officer twice in October 2021, and being unreachable in his address of record in Delta Junction in November, a warrant was issued for his arrest.[2] His probation officer suspected that Defendant was not residing at his father's Delta Junction address, where he was required to reside by his conditions of probation.[3] Defendant's family, including his father, sister, and brother, were not always forthcoming with authorities in locating Defendant, and Defendant himself appeared to be in hiding.[4] A Petition to revoke probation was filed on January 13, 2022, and he was on abscond status as of January 24, 2022.

There was evidence that Defendant was residing in Fairbanks at the 27th Avenue residence, which was being purchased by his brother, Ruvim Malyk, but it was unclear as to in which unit Defendant was staying. On December 22, 2021, approximately eight weeks before the search at issue, a man believed to be Defendant along with Defendant's girlfriend at the time, JoHanna Hunter, were observed by law enforcement coming out of unit 3A and going down to unit 2A.[5] Upon her arrest for a probation violation, Hunter indicated that she was staying in unit 1A, but a probation search concluded that 1A was vacant.[6] Having just observed her entering 2A, a probation search was then performed of 2A where they discovered Defendant's Department of Corrections wristband with photo, as well as outgoing mail with Defendant's name on it. There also was a message written on a whiteboard about a Ford Fusion, which Defendant owned, needing an oil change.[7] In addition, evidence of drug use was discovered as well as some firearm parts and a locked safe.[8] Of significance, there was also a distinct looking cat with a leopard spot print

---

[2] Transcript (Tr.) 24–27.
[3] Tr. 13 & 25.
[4] Tr. 25, 61–62, 95.
[5] Tr. 17.
[6] Tr. 19.
[7] Tr. 21.
[8] Id.

located in unit 2A.[9] It was on this occasion that Defendant's brother, after initially attempting to mislead authorities, indicated that Defendant also resided in unit 2A.[10] The totality of circumstances led probation to conclude that Defendant was residing in unit 2A in December 2021.[11]

Fast forward to February 8, 2022, the date of the search at issue here, when probation again was called to the 27th Avenue complex by law enforcement who had contacted Defendant regarding an unrelated matter.[12] At this time Defendant had been on abscond status for several weeks and there was a pending warrant for his arrest.[13] Upon arrival, the probation officer notified Defendant that his residence would be subject to a probation search with the assistance of law enforcement. Defendant then provided the door code to unit 2A.[14] However, unit 2A no longer looked as it did when searched in December. It was in disarray as if its tenant was in the process of moving.[15] Believing that Defendant was using unit 1A for storage, the probation officer also searched 1A but found that it was not a living quarters.[16] However, they found items in 1A known to belong to Defendant, as well as a key to unit 3A.[17] It appeared to probation that Defendant, and other relatives, were using four of the six apartments on the A side of the building,[18] and that the other two units (A5 and A6) were rented by unrelated individuals.[19]

---

[9] *Id.*
[10] Tr. 19, 44–45, 57.
[11] Tr. 22.
[12] Law enforcement was investigating whether Defendant was involved in a burglary in North Pole.
[13] Tr. 74.
[14] Tr. 49.
[15] Tr. 31.
[16] Tr. 92.
[17] Tr. 55.
[18] Defendant's sister Alyona lived in Unit 4A. Tr. 93. Another sister, Tatiana Malyk, claimed to live in Unit 3A. Tr. 62.
[19] Tr. 93–94.

At this point, members of the Malyk family owned the building, and Probation concluded that the Malyk family, including Defendant, "had access to the entire apartment complex."[20]

Probation's attention then turned to unit 3A, which probation believed Defendant had access to based on observations made in December of 2021, and based on the fact that the distinctive-looking cat found in unit 2A in December now appeared in the window of unit 3A.[21] A subsequent search of unit 3A revealed that most of the items previously found in unit 2A were now in unit 3A, including the safe that had been observed in December.[22]

### III. DISCUSSION

It is undisputed that Defendant's conditions of probation included a requirement that he "[s]ubmit to a search directed by a probation officer [of] his person, personal property, residence and any vehicle in which he is found for the presence of alcohol, illegal drugs, drug paraphernalia, or weapons."[23] For the parole-search exception to apply, "law enforcement officers must have *probable cause* to believe that the parolee is a resident of the house to be searched."[24] The Fourth Amendment extends same protection to probationers.[25] Accordingly, the issue presented here is whether the probation officer had probable cause to believe that Defendant was "residing" at unit 3A in the 27th Avenue apartment complex at the time she instructed law enforcement to search the unit on February 8, 2022.[26]

---

[20] Tr. 55.
[21] Tr. 31 & 50.
[22] Tr. 32.
[23] Docket 30-2 at 1.
[24] *Chong v. United States*, 112 F.4th 848, 860 (9th Cir. 2024) (citations omitted).
[25] *United States v. Franklin*, 603 F.3d 652, 656 (9th Cir. 2010) (Finding that the "facts overwhelmingly support the district court's finding that there was probable cause to believe that [the defendant] was residing in the motel room.").
[26] The Court is not persuaded by Defendant's argument that the search was actually a warrantless law enforcement search in violation of the Fourth Amendment, rather than a probation search pursuant to Defendant's Probation conditions.

"Probable cause" requires "that the facts available to the officer would warrant a [person] of reasonable caution" to believe that the probationer was residing in a particular residence.[27] "Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence . . . have no place in the [probable-cause] decision."[28] Rather, all that is required is "the kind of 'fair probability' on which 'reasonable and prudent [people,] not legal technicians, act.'"[29] In evaluating whether the State has met this common-sense standard, courts look to "the totality of the circumstances."[30]

The Ninth Circuit has explained that "[r]esidential arrangements take many forms. A 'residence' does not have to be an old ancestral home, but it requires more than a sleepover at someone else's place[,]" and it is "insufficient to show that the parolee may have spent the night there occasionally."[31] Moreover, if a house or apartment belongs to someone else, one cannot also infer that it is also the "residence" of a probationer "simply because the probationer happens to be seen there."[32] When a home is known to belong to someone else, there must be "at least some concern for the rights of that other person."[33] But despite Defendant's sister's claim that *she* resided in unit 3A, the Court is not persuaded by Defendant's argument that "the probation officers had no basis to conclude that Malyk might be associated with other apartments besides apartment 2A."[34]

---

[27] *Franklin*, 603 F.3d at 656 (citing *Texas v. Brown*, 460 U.S. 730, 742 (1983)).
[28] *Fla. v. Harris*, 568 U.S. 237, 243–44 (2013) (citing *Illinois v. Gates,* 462 U.S. 213, 235 (1983)).
[29] *Id.* (citation omitted).
[30] *Id.*
[31] *Franklin*, 603 F.3d. at 656–57.
[32] *Id.*
[33] *Id.*
[34] Docket 29 at 20.

The Ninth Circuit has identified circumstances which weigh in favor of finding probable cause to believe a probationer resides at a location, including: (1) the probationer doesn't appear to be residing at any address other than the one searched, or officers have good reason to believe that the individual was not actually residing at his reported address; (2) the officers had directly observed something that gave them good reason to suspect that the individual was using his unreported residence as his home base; (3) the parolee had a key to the residence in question, and (4) either the parolee's co-resident or the parolee himself identified the residence in question as that of the parolee.[35] Moreover, the Ninth Circuit has also upheld searches of all the property at a listed street address under warrants that recite probable cause as to only a portion of the premises where a multi-unit building or a collection of separate buildings is used as a single entity, where the defendant is in control of the whole premises, or where an entire premises is suspect.[36]

Defendant was not living with his father at his address of record in Delta Junction and was on abscond status. Moreover, he was found in his vehicle at the apartment complex owned by at least one member of his family and was observed at that location on previous occasions. The prior owner had stated, when the Malyk family (or an associated LLC) was in the process of purchasing that building from him, that they had access to "all of the apartments."[37] At least two of Defendant's siblings lived in the building, and one

---

[35] *Cuevas v. De Roco*, 531 F.3d 726, 734 (9th Cir. 2008).
[36] *United States v. Frazin*, 780 F.2d 1461, 1467 (9th Cir. 1986) (citing *United States v. Alexander,* 761 F.2d 1294, 1301 (9th Cir. 1985)).
[37] Tr. 44. Testimony at the hearing indicated that although Ruvim Malyk stated that he was purchasing the building, "after talking to several other Malyks they all kind of indicated that they were part of this situation." *Id.*

served as the property manager. His family previously had been complicit in helping him avoid the police. Defendant knew the code for unit 2A, which contained some, but not the majority of, his belongings. Unit 1A was known to be a storage unit, and contained more of Defendant's belongings, as well as a key to unit 3A.[38] And, while the cat in the window was not dispositive of the issue, it was one more thing supporting probation's suspicions as to Defendant's residence, given that Defendant was actively attempting to mislead probation as to his whereabouts and leaving probation to follow the leads as they developed.

Based on a totality of the circumstances, and the challenge of locating a Defendant who does not wish to be located, with family members who are assisting him in his efforts, the Court cannot find that probation's efforts in locating Defendant and conducting a search of his current residence was inappropriate. Moreover, and again based on a totality of the circumstances, the Court concludes that *as circumstances developed*, probation did have probable cause to believe that Defendant was residing in unit 3A at the time the probation search was conducted.

Therefore, for the reasons set forth above, as well as for the reasons set forth by the Government at Dockets 30 and 68, the Motion to Suppress at Docket 29 is hereby DENIED.

IT IS SO ORDERED this 23rd day of December, 2024, at Anchorage, Alaska.

                                                  */s/ Ralph R. Beistline*
                                                  RALPH R. BEISTLINE
                                           Senior United States District Judge

---

[38] Tr. 55.

*United States v. Malyk*  Case No. 4:23-cr-00021-RRB
Order Denying Motion to Suppress  Page 7
Case 4:23-cr-00021-RRB-SAO   Document 76   Filed 12/23/24   Page 7 of 7